UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————
№ 13-CV-2458 (JFB)
———————————

MARTA POUERIET CORREA,

Plaintiff,

VERSUS

CAROLYN W. COLVIN,
*Commissioner of Social Security*,

Defendant.

———————————

**MEMORANDUM AND ORDER**
September 19, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Correa brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the Commissioner of Social Security ("defendant" or "Commissioner") denying plaintiff's application for disability insurance benefits. An Administrative Law Judge ("ALJ") found that plaintiff had the residual functional capacity to perform "the full range" of sedentary work, of which there were a significant number of jobs in the national economy, and, therefore, that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review.

The Commissioner now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, alleging that the ALJ's determination of plaintiff's residual functional capacity was not based on substantial evidence.[1]

For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is granted to the extent that it seeks a remand. Remand is warranted because the ALJ determined that plaintiff was capable of performing sedentary work, despite the absence of any evidence suggesting that she could sit for the required six hours per day, and the presence of reports by two examiners that plaintiff could only sit

---

[1] Plaintiff also argues that the ALJ erred by failing to request the testimony of a vocational expert, but the Court need not decide whether this was error, in light of the remand for reevaluation of plaintiff's functional capacity, which may involve further development of the record.

for 2-3 hours total in an 8-hour workday. At the very least, the ALJ was obliged to further develop the record concerning plaintiff's functional abilities and limitations, and accordingly, a remand on that issue is warranted.

I. BACKGROUND

A. Factual Background

The following summary of the relevant facts is based upon the Administrative Record ("AR") developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein.

1. Plaintiff's Work History

Plaintiff was born in 1972 in Santo Domingo (AR at 41, 105), came to the United States in 1997 (*id.*), and has an eighth-grade education (*id.* at 41-42, 134). She reads, writes, and understands English, and last worked as a clerk in two stores, from approximately 2004 to 2008. (*Id.* 41-45.)

2. Plaintiff's Medical History

Plaintiff was in a car accident on April 25, 2008, and sought treatment in the emergency room for low-back and chest pain. (*Id.* at 45, 178-85.) At the time, she had normal ranges of motion in her neck and back, and the diagnosis was contusion and motor vehicle accident trauma. (*Id.*)

An MRI of plaintiff's cervical spine was performed on June 1, 2008, and it showed a partial fusion of the C2 and C3 vertebral bodies, small disc herniations, and a mild left neural foraminal stenosis. (*Id.* at 187-88.) The next day, an MRI of the lumbar spine revealed a "[t]iny central disc herniation at L3-L4 without nerve root impingement," as well as two bulging discs. (*Id.* at 186.)

The record suggests that plaintiff underwent additional medical treatment in 2008, but the parties do not dispute that those records are unavailable. (*Id.* at 173.)

On April 11, 2011, plaintiff was examined by Dr. Maan Shikara for complaints of right arm pain and associated numbness. (*Id.* at 153.) She had a lump on her wrist, which Dr. Shikara diagnosed as a ganglion cyst, and although her ranges of motion in all four extremities and her neurological examination were normal, Dr. Shikara also assessed herniated discs in the cervical and lumbar spine. (*Id.*)

On April 30, 2011, plaintiff underwent NCV studies which revealed moderate right sensorimotor median nerve neuropathy at the wrist, consistent with carpal tunnel syndrome. (*Id.* 158-61.) On May 5, 2011, Dr. Erika Hiby diagnosed carpal tunnel syndrome (as well as low back pain) and noted plaintiff's decreased right-hand grasp. (*Id.* at 152.)

On referral from Dr. Hiby, plaintiff saw Dr. Christopher Durant, an orthopedic surgeon, on June 1, 2011. (*Id.* at 202-03.) Dr. Durant also diagnosed right carpal tunnel syndrome, and plaintiff agreed to have surgery. (*Id.*) Dr. Durant performed the surgery on July 7, 2011, and by July 20, 2011, plaintiff was observed to be fully capable of flexing and extending her right fingers. (*Id.* at 200.)

As part of her claim for benefits, plaintiff was examined on August 15, 2011, by Dr. Andrea Pollack. (*Id.* at 162-65.) Plaintiff told Dr. Pollack that she experienced constant, strong neck and back pain, with radiation to her right leg, since the car accident in 2008. (*Id.* at 162.) Dr. Pollack noted plaintiff's MRI results as well as her recent carpal tunnel surgery, and performed a general physical examination of plaintiff.

2

(*Id.* at 162-64.) Plaintiff displayed a normal range of motion and grip strength (but positive straight-leg raising), and although Dr. Pollack observed that plaintiff had a normal gait and could rise from her chair and the examination table without difficulty, Dr. Pollack did not reach any specific functional-capacity findings.[2] (*Id.*) Instead, the "Medical Source Statement" at the end of her report states that plaintiff "has a moderate restriction in bending, lifting, carrying, pushing, pulling and squatting," as well as in the use of her right hand. (*Id.* at 164.) Dr. Pollack also noted that plaintiff had "a mild restriction in walking, climbing stairs, and standing." Dr. Pollack's Medical Source Statement did not discuss the extent of these restrictions, or define "moderate" or "mild," and she made no mention of plaintiff's abilities or limitations with respect to sitting. Her diagnosis was that plaintiff suffered from "[c]hronic neck to lower back pain with radiation" as well as "[r]ight hand pain." (*Id.*)

The next day, August 16, 2011, plaintiff underwent an x-ray of her lumbar spine, which confirmed degenerative changes; in particular, mild degenerative spondylosis at L4-L5. (*Id.* at 166.)

At some point in 2011 or early 2012, plaintiff began seeing a chiropractor, Michelle Lester. (*Id.* at 51.) On July 2, 2012, Lester submitted a "Medical Assessment of Ability to do Work-Related Activities." (*Id.* at 189.) She reported that, during an 8-hour workday, plaintiff could carry up to ten pounds "occasionally," stand and/or walk for 3 hours, and sit for 2 hours total, with 10-minute breaks every hour. (*Id.* at 189-90.) These findings were based on signs showing plaintiff's cervical compression and impingements, positive straight-leg raising, range of motion tests, and plaintiff's reports of pain. (*Id.*)

Plaintiff also was examined by Dr. Jean Futoran on June 28, 2012, who performed range of motion and straight-leg raising tests, and whose findings largely matched Lester's. Dr. Futoran concluded that plaintiff was only capable of sitting and standing for 2-3 hours each in an 8-hour workday, with breaks every 30 minutes, and of lifting 10-15 pounds occasionally. (*Id.* at 208-09.) However, Dr. Futoran's report was not before the ALJ; plaintiff submitted it to the Appeals Council only, which noted that it received the report and made it part of the record, but did not explain what, if any, weight the report was afforded. (*Id*. at 4-5.)

3. The Administrative Hearing

Plaintiff testified before the ALJ on July 17, 2012. She described "constant" back and neck pain as a result of the car accident (*id.* at 46), which made it difficult for her to sit or stand for longer than 15 minutes, or to walk for longer than 20 minutes. (*Id.* at 48.) Sometimes, she could dress and bathe herself, but if her back pain was bad enough, she would have to seek assistance from family members. (*Id.* at 48-49.) She had been visiting Lester, the chiropractor, for seven months, but did not feel that her condition was improving. (*Id.* at 51.) She could perform many basic household tasks involving motor skills (*id.* at 52-54), but could not take out the trash, vacuum, mop the floor, go to the movies, or perform gardening, and could climb stairs slowly. (*Id.* at 55-58.) Plaintiff was wearing a back brace during the hearing. (*Id.* at 58.)

---

[2] However, as discussed below, the initial decisionmaker on plaintiff's application for benefits relied primarily on Dr. Pollack's report in concluding that plaintiff was capable of performing sedentary work. (AR at 167-72.) That conclusion is the only place in the record where someone, other than the ALJ, stated that plaintiff was capable of sitting for six hours.

3

### B. Procedural History

Plaintiff applied for disability insurance benefits on May 23, 2011, alleging disability since April 25, 2008. (*Id.* at 105, 116.) Her application was denied on September 15, 2011. (*Id.* at 62.) Plaintiff requested a hearing, and she testified before the ALJ on July 17, 2012. (*Id.* at 38-61.) On July 30, 2012, the ALJ issued a decision concluding that plaintiff was not disabled, and could perform "the full range of sedentary work." (*Id.* at 14-21.) Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on March 11, 2013. (*Id.* at 1-5.)

Plaintiff filed the complaint in this action on April 23, 2013. Defendant moved for judgment on the pleadings on January 31, 2014, and plaintiff cross-moved for the same on February 27, 2014. Neither party filed any additional brief after their first motion brief, and the Court has fully considered both briefs and the entire administrative record.

### II. STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

### III. DISCUSSION

#### A. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has

a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("[T]here is only a limited burden shift to the Commissioner at step five. Under the applicable new regulation, the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity.")

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Brown*, 174 F.3d at 62. (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

B. Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. As set forth below, this Court concludes that this case should be remanded to the Commissioner because the ALJ erred by concluding that plaintiff was capable of sedentary work, despite the absence of any evidence in the record showing that she was capable of sitting for six hours per day, and the presence of evidence from two examiners showing that she could not.

1. The ALJ's Decision

a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity is work activity that involves doing significant physical or mental activities," *id.* § 404.1572(a), and gainful work activity is work usually done for pay or profit, *id.* § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ concluded that plaintiff did not engage in substantial gainful activity since the onset date of April 25, 2008. (AR at 16.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

b. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental

5

ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46. The ALJ in this case found that plaintiff had two severe impairments: degenerative disc disease of the lumbar spine and carpal tunnel syndrome. (AR at 16.) Substantial evidence supports these findings, and plaintiff does not challenge their correctness.

### c. Listed Impairment

If the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 16.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

### d. Residual Functional Capacity

If the severe impairments do not meet or equal a listed impairment, the ALJ assesses the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). The ALJ then determines at step four whether, based on the claimant's residual functional capacity, the claimant can perform her past relevant work. *Id.* § 404.1520(f). When the claimant can perform her past relevant work, the ALJ will find that she is not disabled. *Id.*

Here, the ALJ determined that plaintiff was unable to perform her past relevant work, which was "light" work, but found her capable of "the full range of sedentary work." (AR at 20.) In reaching this conclusion, the ALJ relied heavily on the report of Dr. Pollack, who examined plaintiff on behalf of the SSA. (*Id.* at 18.) After reciting the observations and findings in Dr. Pollack's report, the ALJ concluded that "Dr. Pollack's evaluation of the claimant is fully consistent with the conclusion that she is limited to sedentary work." (*Id.* at 18-19.) As is discussed *infra*, the Court concludes that this finding is not supported by substantial evidence.

### e. Other Work

At step five, if the claimant is unable to perform her past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Commissioner has the burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform. *Id.* § 404.1560(c). In this case, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity, in connection with the Medical-Vocational Guidelines set forth at Appendix 2 of Part 404, Subpart P of Title 20 of the Code of Federal Regulations, and found that plaintiff has the ability to perform a significant number of jobs in the national economy. (AR at 19-20.)

The Court disagrees, however, that the Commissioner carried her burden to demonstrate that there was substantial evidence supporting a finding that plaintiff could perform a significant number of jobs requiring sedentary work. Likewise, the Court concludes that the ALJ erred with respect to plaintiff's functional capacity. Although an ALJ is no longer required to produce affirmative evidence with respect to a claimant's functional capacity, *see Poupore*, 566 F.3d at 306, the ALJ's decision

must still be supported by substantial evidence. Here, the Commissioner has failed to point to substantial evidence to support a finding that plaintiff is able to perform sedentary work.

The ALJ's conclusion was based primarily on a connection he drew between Dr. Pollack's report and the ability to perform sedentary work.³ However, sedentary work "[b]y its very nature . . . requires a person to sit for long periods of time," *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983), specifically six hours per day, *see Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010). Despite the specificity of that requirement, the ALJ considered it to be fulfilled by the report of Dr. Pollack, who did not mention, much less test or observe, plaintiff's capabilities or limitations with respect to sitting for an extended period. That alone makes Dr. Pollack's report an insufficient basis for the ALJ's decision. *Cf. Archambault v. Astrue*, No. 09 Civ. 6363(RJS)(MHD), 2010 WL 5829378, at *27 (S.D.N.Y. Dec. 13, 2010) (remanding and characterizing as "elusive" ALJ's determination that claimant could sit for six hours, when primary report relied upon made no reference to sitting), *report and recommendation adopted*, 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011).

The ALJ nonetheless characterized Dr. Pollack's report as "detailed" and containing "extensive findings supportive of a conclusion that the claimant is able to perform sedentary work." (AR at 19.) As noted, Dr. Pollack did not address the primary requirement of sedentary work—sitting—at all, and her comments concerning other requirements were neither "detailed" nor "extensive." Her "Medical Source Statement," which is supposed to be a statement about "what [a claimant] can still do despite [her] impairment(s) based on the acceptable medical source's findings," 20 C.F.R. § 404.1513(b)(6), stated simply that plaintiff had a "moderate restriction" with respect to certain capabilities such as lifting and using her right hand, and a "mild restriction in walking, climbing stairs, and standing." (AR at 164.) The Second Circuit has characterized such language as "so vague as to render it useless in evaluating whether [a claimant] can perform sedentary work," particularly where an examining source has made a more precise finding. *Curry v. Apfel*, 209 F.3d 117, 123 & n.3 (2d Cir. 2000); *see also Faherty v. Astrue*, No. 11-CV-2476(DLI), 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013) (remanding where "the ALJ gave significant weight to [consulting physician] even though she acknowledged that his medical source statement did not contain the terminology used in the regulations," and instead "provided moderate and mild limitations for certain activities, without stating how long Plaintiff could perform work-like activities"); *Richardson v. Astrue*, 10 CIV. 9356 (DAB)(AJP), 2011 WL 2671557, at

---

³ To the extent that the ALJ also relied on plaintiff's testimony, he did so with respect to plaintiff's motor skills, and not with respect to her ability to sit for extended periods. In fact, plaintiff testified that she could only sit for fifteen minutes at a time due to back and neck pain that was a "ten" on a scale of one to ten; she would then have to shift to standing and walking for short periods. (AR at 47-48.) Although plaintiff also testified that she spends most days "[s]itting watching T.V. or standing," (*id.* at 51), there was no evidence that she did either for a sustained period of time as would be required for sedentary work. *Cf. Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) ("Nor has the Secretary sustained his burden on the basis of (1) Carroll's testimony that he sometimes reads, watches television, listens to the radio, rides buses and subways, and (2) the ALJ's notation that Carroll 'sat still for the duration of the hearing and was in no evident pain or distress.' There was no proof that Carroll engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job. On the contrary, as far as the record is concerned he did these things only for short periods.").

*12 (S.D.N.Y. Jul. 8, 2011) ("Consulting Dr. Tsinis's conclusion that Richardson's ability to sit was 'mildly to moderately' impaired . . . provides no support for ALJ Tannenbaum's conclusion that Richardson could perform sedentary work."), *report and recommendation adopted*, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011); *Dambrowski v. Astrue*, 590 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (remanding where ALJ relied on "vague and conclusory medical determination" that claimant was "moderately impaired in activities requiring lifting, carrying and traveling").

The ALJ's reliance on Dr. Pollack's report—despite its vague functional findings and its lack of any specific conclusion about sitting—is aggravated by the fact that two of plaintiff's examiners *did* reach specific conclusions regarding sitting. Michelle Lester, the chiropractor who plaintiff testified she had been seeing for seven months (AR at 51), reported that plaintiff could only sit for two hours in an 8-hour workday, interrupted by 10-minute breaks every hour. (*Id.* at 190.) Likewise, Dr. Futoran[4] reported that plaintiff could sit for 2-3 hours total, interrupted by breaks every 30 minutes. (*Id.* at 208.) Both reports were based on range of motion and straight-leg raise tests, as well as plaintiff's reports of pain, and there is no contrary conclusion by an examiner anywhere in the record. In fact, the only statement in the record suggesting that plaintiff could sit for six hours, as required for sedentary work, is in a functional capacity assessment completed by the official who initially denied plaintiff's application for benefits, and it is based almost entirely on Dr. Pollack's report. (*Id.* at 168.)

Because there is no specific observation or finding in Dr. Pollack's report which supports the manner in which the ALJ relied on it, and no evidence which directly conflicts with the examiners' conclusions that plaintiff could not sit for six hours per day, the Court concludes that there is not substantial evidence currently in the record to support a finding that plaintiff could perform sedentary work. *Cf. Archambault*, 2010 WL 5829378, at *27-28 (remanding where two examining sources determined that plaintiff could not sit for six hours per day, and one-time consultative examiner on which ALJ relied "remained notably silent on the extent of [the plaintiff's] limitations, and never referred at all to plaintiff's ability to sit"). Likewise, the Commissioner failed to show that there were jobs in the national economy which plaintiff could perform.

To be clear, the Court does not hold that the ALJ erred with respect to the treating physician rule. The parties do not dispute that Lester was not a treating physician, because she was a chiropractor, and although plaintiff argues that Dr. Futoran was a treating physician, nothing in the record indicates that he was a regular treating provider, as opposed to a one-time examiner.

---

[4] Although the ALJ could not have considered Dr. Futoran's report because it was not submitted until the Appeals Council stage, the report is now part of the administrative record for this Court's review. *See Perez*, 77 F.3d at 46 ("When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.") Defendant argues that the Appeals Council properly rejected plaintiff's appeal despite Dr. Futoran's report because, even if it qualified as "new" and "material" evidence, the report was similar to Lester's opinion, which the ALJ had already rejected. However, the similarity between the two reports is precisely the reason why this case must be remanded. The reports corroborate each other, and their specific findings with respect to sitting are essentially uncontroverted elsewhere in the record. Thus, on remand, it is important that the ALJ consider the opinions of both Lester and Dr. Futoran and, if necessary, further develop the record in light of their findings.

*See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("The record is insufficient . . . to compel a conclusion that Dr. Moore is also a treating physician, because there is no clear evidence that Dr. Moore's involvement with Snell extended beyond Moore's writing one letter to the Appeals Council.").

Nonetheless, both Lester and Dr. Futoran are acceptable sources of medical evidence in support of plaintiff's claim, *see* 20 C.F.R. § 404.1513(a), (d), and their observations are essentially uncontroverted. Even if Dr. Futoran does not qualify under the treating physician rule, he is still an examining physician. Likewise, Lester's conclusions were entitled to greater consideration than the ALJ afforded them. Chiropractors are specifically listed in the regulations as other "[m]edical sources," *see* 20 C.F.R. § 404.1513(d)(1), and courts have concluded that the opinions of such providers should not be lightly disregarded where there is a regular treatment relationship, allowing the provider to develop the full perspective often attributed to treating physicians. *See Losquadro v. Astrue*, No. 11-CV-1798(JFB), 2012 WL 4342069, at *15 (E.D.N.Y. Sept. 21, 2012) ("[T]he ALJ must afford *some* weight to a treating chiropractor's assessment."); *Baron v. Astrue*, No. 11 Civ. 4262(JGK)(MHD), 2013 WL 1245455, at *26 (S.D.N.Y. Mar. 4, 2013) (collecting cases concerning other non-treating sources); *Acevedo v. Astrue*, No. 11 Civ. 8853(JMF)(JLC), 2012 WL 4377323, at *10 (S.D.N.Y. Sept. 4, 2012) (same). The regulations also state that the Commissioner will consider the nature, extent, length, and frequency of a treatment relationship for *any* medical source, even if the opinion of that source is not entitled to controlling weight under the treating physician rule. *See* 20 C.F.R. § 404.1527(c).

It does not appear that the ALJ (or the Appeals Council) considered these factors with respect to Lester or Dr. Futoran. An ALJ (or even an Appeals Council) cannot "set [their] own expertise against that of" an examining medical source, because they are lay people who are not in a position to know whether plaintiff's condition would prevent her from sitting for six hours per day. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks and citation omitted). An example is the ALJ's assertion that "[t]he contention that the claimant cannot sit six hours in an eight-hour workday is unsupported by significant clinical and diagnostic findings," after which the ALJ points to the use of the word "mild" in the MRI report and the fact that "the electrodiagnostic and nerve conduction velocity studies were entirely normal." (AR at 19.) Even granting those assertions to the ALJ, the Court notes that the ALJ had already concluded that plaintiff was suffering from a severe impairment—degenerative disc disease—and the ALJ is simply not better positioned than an examining doctor or chiropractor to determine whether even "mild" degeneration—herniated and bulging discs which were documented throughout the record—could cause the severe and constant pain testified to by plaintiff, and affect her ability to perform the specific task of sitting for six hours in an 8-hour work day.[5] Because Dr. Pollack did not address that task, the ALJ's conclusion lacks a substantial basis in the medical evidence. *Accord McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot

---

[5] Likewise, the ALJ's decision to credit Lester's conclusions with respect to lifting, standing, and walking, while affording little weight to her conclusion about sitting, lacks a basis in the medical evidence. In other words, the ALJ did not explain, and the Court cannot discern, how Dr. Pollack's report or any of the clinical and diagnostic findings provide a substantial basis for that distinction.

9

arbitrarily substitute his own judgment for competent medical opinion.").

To the extent that the ALJ relied on Dr. Pollack's report as "fully consistent" with his determination that plaintiff could perform sedentary work, rather than as direct evidence of it, the Court notes that this was still error. Courts in this circuit have warned against reliance on a consulting physician's report as "consistent" with the ALJ's conclusion where the report is silent on the particular issue of functional capacity. *See, e.g.*, *Rosa*, 168 F.3d at 81; *Sobolewski v. Apfel*, 985 F. Supp. 300, 315 (E.D.N.Y. 1997). Even though the ALJ no longer bears the burden to introduce affirmative evidence of functional capacity, he must still base his functional capacity decision on substantial medical evidence, "using 'all the relevant evidence in [the] case record.'" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2012) (quoting 20 C.F.R. § 404.1545(a)(1)); *cf. Valerio v. Comm'r of Soc. Sec.*, 08-CV-4253 (CPS), 2009 WL 2424211, at *16 (E.D.N.Y. Aug. 6. 2009) ("The ALJ seems to have arrived at [functional capacity] determination simply by rejecting Dr. Kuiper's medical opinion. . . . Significantly, the only RFC assessments contained in the record were completed by plaintiff's treating physicians. Rejecting expert medical opinion, without setting forth adequate reasons based on medical evidence, cannot constitute the 'substantial evidence' required to support the Appeals Council's conclusions."). Here, no evidence in the case record—much less substantial evidence—showed that plaintiff could sit for six hours per day, and Dr. Pollack's statements with respect to her other functional limitations were vague. In fact, those statements could just as easily be considered "consistent" with plaintiff's inability to perform sedentary work, depending on how one defines a "moderate" restriction. While reasonable minds could differ on that question, there is simply nothing in the record that "a reasonable mind might accept as adequate to support a conclusion" that plaintiff could sit for six hours per day, *Perales*, 402 U.S. at 401, especially considering the contrary conclusions of Lester and Dr. Futoran.

At the very least, if the ALJ was concerned about the state of the evidence concerning plaintiff's functional limitations, he had an obligation to further develop the factual record on that issue. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) ("[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.") (internal quotation marks and citations omitted); *see also Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) ("[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). Because he failed to do so, the ALJ must reevaluate plaintiff's functional capacity and further develop the record on remand if he continues to find the conclusions of Lester and Dr. Futoran to be worthy of less than controlling weight.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is granted to the extent that it seeks a remand. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date: September 19, 2014
Central Islip, NY

\* \* \*

Plaintiff is represented by Michael Brangan, Sullivan & Kehoe, 44 Main Street, Kings Park, NY 11754. Defendant is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Jason Peck and Kenneth Abell, 610 Federal Plaza, Central Islip, NY 11722.